IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN ADDLESPURGER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:16cv1157 |
| | ) | **Electronic Filing** |
| **DAVID WECHT**, **SUPERIOR COURT** | ) | |
| **OF PENNSYLVANIA**, **SUPREME** | ) | |
| **COURT OF PENNSYLVANIA**, **STATE** | ) | |
| **OF PENNSYLVANIA**, **KIMBERLY** | ) | |
| **BERKELEY CLARK**, **DOMESTIC** | ) | |
| **RELATIONS SECTION OF** | ) | |
| **ALLEGHENY COUNTY**, **PATRICK** | ) | |
| **QUINN**, **EUGENE STRASSBURGER**, | ) | |
| **KATE FORD ELLIOTT**, **PAULA** | ) | |
| **FRANCISCO OTT**, **CORREALE** | ) | |
| **STEVENS**, **JOHN BENDER**, and | ) | |
| **SUSAN PEIKES GANTMAN**, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION**

Steven Addlespurger ("plaintiff") commenced this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 seeking redress for the alleged violation of his First, Fifth and Fourteenth Amendment rights. Plaintiff's claims arise from "a very long and contentious family court case" administered in the Family Division of the Allegheny County Court of Common Pleas. Verified Amended Complaint (Doc. No. 21) at ¶ 26. Named as defendants here are the Commonwealth of Pennsylvania, several of its courts, numerous judges who entered orders in or related to plaintiff's family court case, appellate judges who reviewed some of those orders and court administrators. Id. at ¶¶ 3-15. Presently before the court is defendants' motion to dismiss. For the reasons set forth below, the motion will be granted.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all

allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL

2

PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins, 293 F.3d at 688 (quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook procedural shortcomings in pleadings submitted by those who choose to represent themselves.

3

McNeil, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal Rule of Civil Procedure 8(a). And, while Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claims showing that the pleader is entitled to relief," Rule 12(b)(6) is not without meaning. Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002). It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Id. at 142 - 43 (quoting Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 318 (2d ed. 1990)). This principle appears to be even more well-grounded after Twombly.

Further, although the focus in assessing a motion to dismiss is on the allegations set forth in the pleadings, "matters of public record, orders [and] exhibits attached to the complaint" also may be considered. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357); Pension Benefit Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (In ruling on a motion to dismiss, a district court can consider the complaint, attached exhibits, and matters of public record.). Matters of public record include judicial proceedings and a court may take judicial notice of another court's opinions and orders. Southern Cross Overseas Agencies v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). Finally, in applying the plausibility standard a reviewing court must make a context-specific inquiry, drawing on its judicial experience and common sense. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

Plaintiff's family court case began in July of 2004 when plaintiff's ex-spouse, Julie McVay Addlespurger, initiated a proceeding for support. The case continued until August 1, 2014, when plaintiff's youngest child was emancipated. Id. at ¶¶ 24, 93. This contentious ten-year case generated 527 docket entries. Id. at ¶ at 26. A divorce decree was entered in July of 2009, but the court continued to assert its jurisdiction over plaintiff on the theory that a final order had not been entered. Id. at ¶ 25.

Defendant David Wecht was a judge in the Family Division and became assigned to the case on or about September 27, 2004, and continued to preside over and entered orders in it until July 10, 2009. Id. at ¶¶ 3, 45-65.[1] During this time Justice Wecht entered orders regarding equitable distribution, child support and the payment of attorney's fees to McVay's attorney, Charles Voelker. Id. at ¶ 27. "Many of these orders either combined child support with attorney fees, ordered both in a lump sum, ordered attorney fees and child support to be deducted from equitable distribution and/or authorized attorney fees to be paid into and out of child support." Id. at ¶ 28. "The co-mingling of child support, equitable distribution, and attorney fees, as well as the often illegible orders, led to an unable to decipher numeric nightmare." Id. at ¶ 29.

This combination of illegible orders and the co-mingling of obligations led to several instances where plaintiff paid money toward his child support obligation and it inappropriately was used to pay attorney fees to Voelker. Id. at ¶¶ 30-31. The use of funds in this manner was ordered by Justice Wecht "prematurely and in violation of all rules, statutes and case law." Id. at ¶ 35. As a practical matter, when plaintiff paid funds for his past due support obligations and it was instead used to pay Voelker, plaintiff would immediately be placed back into being in

---

[1] The Honorable David Wecht is now a justice of the Supreme Court of Pennsylvania.

5

arrears on his support obligation and then would have to pay more money or face being incarcerated for being in arrears. Id. at ¶¶ 31-34.

Orders were entered in the case that led to plaintiff's incarceration on 11 occasions. Id. at ¶ 34. These periods of incarceration ranged from 60 to approximately 200 days. Id. at ¶ 33. All of these stints of incarceration were the result of orders entered by Justice Wecht. Id. at ¶ 34. Plaintiff protested the way the funds were allocated and paid to Voelker, but his protests were in vein. Id. at ¶ 37. The orders granting fees to Voelker were often entered *sua sponte* and the amounts awarded were "pulled out of the air." Id. at ¶ 46.

The unjustified and excessive orders were entered by Justice Wecht in retaliation for plaintiff making allegations of corruption about the Allegheny County Family Division and Justice Wecht. Id. at ¶ 47. Among other things, plaintiff publicly disseminated information about the illegal orders, the contributions from Voelker's firm to Justice Wecht's campaign, and plaintiff's illegal incarceration. Id. at ¶ 49. Plaintiff found himself in a circular state of affairs where he was unable to stay current on his support obligations, which in turn resulted in plaintiff being incarcerated on eleven different occasions over the course of four years. Id. at ¶¶ 50-69.

Over the course of plaintiff's family court case he "repeatedly requested documentation of what was considered to be equitable distribution, child support and attorney fees." Id. at ¶ 72. Plaintiff repeatedly was "denied any such documentation or clarification even though various amounts of money were co-mingled." Id. at ¶ 73.

Plaintiff filed an appeal on December 14, 2012. By this time Justice Wecht had become a judge on the Superior Court of Pennsylvania. Id. at ¶ 74. Justice Wecht was assigned to the panel tasked with hearing plaintiff's appeal. Id. at ¶ 75. Justice Wecht did not recuse himself. Id. at ¶ 76.

6

A number of other judges failed to "intercede" and stop the egregious violation of plaintiff's rights. Judges Elliott and Ott also were assigned to the panel. Id. at ¶ 80. They did not take any action to have Justice Wecht recused from the case. Id. at ¶¶ 81, 135, 141. Judge Strassburger, who did recuse from the panel, failed to take action to have Judge Wecht recuse himself. Id. at ¶ 79. Judges Steven, Bender and Gantman, who were all president judges at some point during the duration of plaintiff's appeal, did not take action to have Justice Wecht removed from the panel. Id. at ¶ 78.

Justice Wecht remained on the panel assertedly to assure that none of plaintiff's allegations of corruption became public as this would tarnish his contemplated run for Justice of the Supreme Court of Pennsylvania. Id. at ¶ 88. He remained as one of the three judges of the panel, consciously made the decision to stay on the case and in effect was part of the case being "decided." Id. at ¶¶ 89-90. The Superior Court did not remand plaintiff's case until August 18, 2014. Id. at ¶ 91. Justice Wecht's decision and conduct violated plaintiff's right to due process. Id. at ¶ 92.

On January 9, 2015, plaintiff presented a written request for an "audit" to court administrator Geraldine Redic, who denied the request by letter dated January 15, 2015. Id. at ¶ 96. Plaintiff followed this via a petition presented to Judge Kimberly Clark "requesting a detailed accounting of all monies allegedly owed and paid throughout the case for equitable distribution and child support as well as amounts of money removed from child support for attorney's fees." Id. at ¶ 97. "Plaintiff received an eight (8) page document titled 'Case Financial Summary' and 'Statement of Arrears.' The document did not explain how the initial amounts were calculated for each item, equitable distribution, child support and attorney fees." Id. at ¶ 98. The defendant judges and administrators in the Family Division covered up the actions by Justice Wecht as well as their own violations of plaintiff's rights. Id. at ¶¶ 103-104.

The above course of conduct purportedly has 1) denied plaintiff his First Amendment rights to petition the court for redress of grievances and to be free from retaliation for seeking such redress; 2) denied plaintiff his First and Fourteenth Amendment rights to access to the courts, due process and equal protection; 3) violated plaintiff's rights by failing to take action and intercede on plaintiff's behalf when it was known or should have been known that plaintiff's rights were being violated; 4) amounted to malicious abuse of process; 5) resulted in an unwarranted seizure of property without due process, which injury is ongoing; 6) violated plaintiff's Fifth Amendment right to be free from unwarranted seizures of property; 7) violated plaintiff's substantive due process rights to be free from arbitrary and capricious acts of government conduct; 8) amounted to a conspiracy to interfere with plaintiff's civil rights; 9) constituted official neglect to prevent the violation of plaintiff's rights; 10) resulted in the intentional infliction of emotional distress; 11) constituted fraud; and 12) amounted to conversion. Plaintiff demands compensatory and punitive damages in excess of $1,000,000.00 plus litigation costs, attorney fees and "any other such relief as deemed appropriate." Id. at addendum clause.

Defendants move to dismiss on a plethora of grounds. First, they assert the statute of limitations bars the lion's share of plaintiff's claims. Second, all claims against the judiciary and the individuals acting in their official capacity are barred by the Eleventh Amendment. Third, judicial immunity bars all claims against the identified judicial officers. Fourth, the Rooker-Feldman doctrine deprives this court of jurisdiction to review the propriety of the state court orders and actions. Fifth, plaintiff's allegations indicate he had ample access to state courts for the purpose of seeking redress. Sixth, the Fifth Amendment is not applicable to the state courts or the state actors. And finally, all court administrative personnel are entitled to quasi-judicial immunity.

This is not plaintiff's first foray into federal court. Plaintiff notes in his Amended Complaint that he filed a *pro se* habeas corpus petition in this court during his tumultuous saga of incarceration. Amended Complaint at ¶ 67; Addlespurger v. Corbett, et. al, 2:08cv1410. That action was assigned to Magistrate Judge Mitchell, who treated it as a second or successive habeas petition. Plaintiff appealed. By order of the Honorable Maryanne Trump Barry of the United States Court of Appeals for the Third Circuit, the action was remanded with direction to consider the complaint as an attempt to commence a civil rights action under 42 U.S.C. § 1983 for injunctive relief based on alleged ongoing due process violations in proceedings before the Allegheny County Court of Common Pleas. Certified Order of Dec. 18, 2009 (Doc. No. 7 in 2:08cv1410), at 2.

On remand, plaintiff's claims were filed as an action pursuant to 42 U.S.C. § 1983. See Addlespurger v. Allegheny County Courts, et. al, 2:09cv1064. In that action plaintiff amended his complaint on December 30, 2010. 2:09cv1064 at Doc. No. 12. Plaintiff therein sought redress based on the course of events in his family court case that occurred up until that point in time. Id. Overlapping defendants between that action and the instant one include: Allegheny County Court of Common Pleas Judges Kimberly Berkley Clark, David Wecht, and Domestic Relations officer Patrick Quinn. Id. This member of the court issued a thorough opinion resolving plaintiff's claims, which were dismissed as barred or otherwise as meritless. See Memorandum Opinion of August 1, 2011 in 2:09cv1064 at Doc. No. 53. The law and analysis of plaintiff's claims in the prior action continue to apply to plaintiff's current claims. Where applicable, we set them forth herein for ease of review.

As an initial matter, plaintiff's efforts to sue the Commonwealth of Pennsylvania, the Supreme Court of Pennsylvania, the Superior Court of Pennsylvania, and the Domestic Relations Section of the Court of Common Pleas of Allegheny County are barred by the Eleventh

9

Amendment.² Alabama v. Pugh, 438 U.S. 781, 781-82 (1978). Eleventh Amendment immunity applies to suits against the state regardless of the relief sought. In re Kish, 212 B.R. 808, 814 (Bkrtcy D. N.J. 1997) ("the 'jurisdictional bar [of the Eleventh Amendment] applies regardless of the relief sought'") (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984)); see also Cory v. White, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the state itself simply because no money judgment is sought.").

Suits against a state agency or a state department are considered to be suits against a state which are barred by the Eleventh Amendment. In re Kish, 221 B.R. 118, 124-25 (Bkrtcy. D. N.J. 1998) (quoting Geis v. Board of Educ. of Parsippany–Troy Hills, Morris Cnty., 774 F.2d 575, 580 (3d Cir.1985)); accord Hafer v. Melo, 502 U.S. 21, 25 (1991); Haybarger v. Lawrence County Adult Probation And Parole, 551 F.3d 193, 198 ("the Eleventh Amendment applies to suits against subunits of the State") (citing Pennhurst, 465 U.S. at 100)). And suits against state officials for acts taken in their official capacity must be treated as suits against the state. Hafer, 502 U.S. at 25.

"The Commonwealth [of Pennsylvania] vests judicial power in a unified judicial system, and all courts and agencies of [that system] are part of the Commonwealth government rather than local entities." Haybarger, 551 F.3d at 198 (citing Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240-41 (3d Cir. 2005) and Pa. Const. art. V, § 1)). It likewise is settled that "Pennsylvania's judicial districts . . . are entitled to Eleventh Amendment immunity." Id.

The Domestic Relations Section is a subunit of the Allegheny County Court of Common Pleas, and thus it is a subunit of the Commonwealth's unified judicial system. See 42 Pa.C.S.A.§

---

² The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997).

10

961 ("Each court of common pleas shall have a domestic relations section . . ."); accord Chilcott v. Erie County Domestic Relations, 283 Fed. Appx. 8, 10 (3d Cir. 2008) ("Furthermore, the District Court properly dismissed the suit against the Erie County Prison and the Erie County Domestic Relations Section of the Erie County Court of Common Pleas because the Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens.").

The Allegheny County Domestic Relations Section is a subunit of the Allegheny County Court of Common Pleas. The Allegheny County Court of Common Pleas is a state entity. Immunity attaches to the actions of the Allegheny County Domestic Relations Section pursuant to the Eleventh Amendment. See Bryant v. Cherna, 520 F. App'x 55, 57 (3d Cir. 2013) ("[T]he state courts of Pennsylvania, including their domestic relations sections, are entitled to immunity from suit in federal court pursuant to the Eleventh Amendment. Accordingly, we agree that both the Family Division and the Domestic Relations Section [of Allegheny County] are immune from suit.").

It follows that all of plaintiff's claims against the Commonwealth of Pennsylvania, its courts and the Allegheny County Domestic Relations Section of the Allegheny County Court of Common Pleas are barred by the Eleventh Amendment. The claims against all of the individual defendants based on acts taken in their official capacity within these governmental units likewise are barred by Eleventh Amendment immunity. Accordingly, all of plaintiff's claims against these entities and individuals must be dismissed.

Even assuming Eleventh Amendment immunity does not bar every cause of action set forth in plaintiff's Amended Complaint, all of plaintiff's claims are time barred by the statute of limitations to the extent they are predicated on events that occurred prior to August 1, 2014. Under the Federal Rules of Civil Procedure, a statute of limitations defense must be raised in the

11

answer because Rule 12(b)(6) does not authorize the defense to be raised by motion. Robinson v. Johnson, 313 F.3d 128, 134–35 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003). Nevertheless, "the law of this circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Id. at 135. "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id.

"Actions brought under 42 U.S.C. §1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued." Larsen v. State Employees' Ret. Sys., 553 F. Supp.2d 403, 415 (M.D. Pa. 2008) (quoting O'Connor v. City of Newark, 440 F.3d 125, 126 (3d Cir. 2006)). Pennsylvania law provides a two-year statute of limitations. 42 Pa. C. S. § 5524.

A claim pursuant to 42 U.S.C. § 1985 likewise is governed by the same principles and thus a two-year statute of limitations. Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989) (Pennsylvania's two-year statute of limitations for personal injury actions applies to § 1985 claims). A § 1986 claim is governed by a one-year limitation period. 42 U.S.C. § 1986. The state law claims of intentional infliction of emotional distress, fraud and conversion have a two-year limitation period. 42 Pa. C. S. § 5524; Bougher, 882 F.2d at 78.

The accrual date of a §1983 claim is governed by federal common-law tort principles. Larsen, 553 F. Supp.2d at 416. Under this approach "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)). Therefore, the "cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Id. (quoting Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)).

Claims predicated on the misuse of legal process typically accrue when the plaintiff is subject to the process because at that point in time he or she knows or should know of the injury. See e.g. Rose v. Bartle, 871 F.2d 331, 350-51 (3d Cir. 1989) (malicious abuse of process claim accrues when the plaintiff is arrested because he or she knows or should know of the improper use of process at that point in time).

Here, plaintiff was patently aware of each of the grounds he advances in support of his constitutional claims. He personally was involved in each hearing wherein he was found to be in arrears and ordered to pay child support and attorney fees. He had knowledge of each occasion where Justice Wecht ordered plaintiff to be incarcerated for failing to pay child support and the actions and events that followed. All of plaintiff's claims that trace their injuries to the entry of orders prior to August 1, 2014, are untimely filed.

Plaintiff's claims predicated on his appeal to the Superior Court and the disposition therein also are time-barred. Plaintiff's appeal to the Superior Court was denied on January 16, 2013. Plaintiff then augmented the record and continued to pursue various matters in that court, including a motion for reconsideration. His motion for reconsideration was denied and the appeal was quashed on December 18, 2013, as untimely. The court noted in its disposition that plaintiff had filed 18 appeals in his family court case. Plaintiff filed a petition for allowance of appeal with the Pennsylvania Supreme Court on February 27, 2014. That petition was denied by the Pennsylvania Supreme Court on July 8, 2014. The record was remitted to the trial court on August 18, 2014.

Plaintiff was aware that his claims had been denied by the panel decision on January 16, 2013. At this point in time plaintiff was aware that Justice Wecht was on the panel. All of his causes of action that are predicated on the asserted impropriety of Justice Wecht remaining on

13

the Superior Court panel accrued on that date and became untimely after January 15, 2015. They certainly were untimely as of August 1, 2016, when the instant action was filed.

Moreover, the record fails to contain any facts or circumstances that would warrant equitable tolling under traditional grounds. The federal doctrine of "equitable tolling stops [a] statute of limitations from running when the date on which the claim accrued has already passed." Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)). "Although the Supreme Court has repeatedly recognized the equitable tolling doctrine, it also has cautioned that" it should be sparingly utilized. Seitzinger v. Reading Hospital & Medical Center, 165 F.3d 236, 240 (3d Cir. 1999); United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998).

Equitable tolling generally is appropriate in three scenarios: (1) where a defendant has actively misled the plaintiff with respect to his or her cause of action; (2) where the plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) where the plaintiff has asserted his or her claim in a timely manner but in the wrong forum. Lake, 232 F.3d at 370 n. 9. Extraordinary circumstances will be recognized where the plaintiff "could not by the exercise of reasonable diligence have discovered essential information bearing on his [or her] claim." Moody v. Kearney, 380 F. Supp.2d 393, 398 (D. Del. 2005) (quoting Kada v. Baxter Health Care Corp., 920 F.2d 446, 452 (7th Cir. 1990)).

Plaintiff cannot assert that defendants mislead him with respect to his causes of action. He knew of both the conduct and the purported results when each of the proceedings ended and/or the orders were entered against him in the public record.

The record likewise lacks any basis to infer or assume that plaintiff was inhibited from bring his claims due to extraordinary circumstances. To the contrary, plaintiff is an experienced filer who has vast experience in initiating claims.

Finally, there is nothing to support an inference that plaintiff somehow commenced this case in another forum. His filing of a petition for an accounting certainly does not provide notice of or constitute the commencement of a § 1983 action. It follows that equitable tolling does not apply and all of plaintiff's civil rights claims that are predicated on conduct occurring prior to August 1, 2014, are time-barred.

The only events identified by plaintiff after August 1, 2014, pertain to his request and petition seeking an audit of the money dispersed in his family court case. Plaintiff did receive a "Case Financial Summary" and "Statement of Arrears" in response to his request/petition, but according to plaintiff the document does not explain how the relevant amounts were calculated for equitable distribution, child support and attorney fees. Plaintiff asserts that this was done intentionally to cover up the prior improprieties that have occurred. Court Administrator Quinn responded to the request by letter and Judge Clark entered the order on plaintiff's petition authorizing the release of only the summary statement.

Of course, plaintiff does not have a right to insist that the production of information about the administration of his family court case be generated or presented to him in a particular format. And the mere failure to produce the requested information to plaintiff's liking does not give rise to a host of civil rights claims stretching back over eleven years. But assuming for the sake of argument that further consideration of these events is warranted, plaintiff's attempt to found claims on them fails for a number of additional reasons.

Defendants Justice Wecht and Judges Elliott, Ott, Steven, Bender, Gantman and Clark ("the judicial defendants") invoke judicial immunity. Immunity from suit applies to judicial officers in the performance of their official duties, thereby relieving them from liability for judicial acts. Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9 (1991)). Furthermore, a "judge will not be deprived of immunity because the action he

15

took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Azubuko, 443 F.3d at 303 (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).

Judicial officers enjoy the same protections from state claims pursuant to Pennsylvania's Sovereign Immunity Act. 1 Pa. C. S. § 2310; Shoop v. Dauphin County, 766 F. Supp. 1327, 1334 (M.D. Pa. 1991) (both the Commonwealth and those officers and officials who act with its authority are immune from suit). And this is so regardless of whether the state law claim is predicated on conduct giving rise to an intentional tort. Id. (although the immunity provided to local governments and agencies is lost under limited circumstances, "[t]he General Assembly has not included any such abrogation of the immunity provided to Commonwealth agency employees.") (quoting Yakowicz v. McDermott, 548 A.2d 1330 (Pa. Commw. 1988), appeal denied, 565 A.2d 1168 (Pa. 1989)).

Plaintiff's claims against the judicial officers are all founded on or involve the review of orders entered against him in his family court case. As plaintiff's claims against the judicial defendants are based on the performance of their duties, the judicial defendants clearly are entitled to judicial immunity on all claims advanced against them. As a result, all claims against the judicial defendants must be dismissed.

Plaintiff's claims against Domestic Relations Officer Quinn and Court Administrator Redic also are barred by judicial immunity. The protections of judicial immunity extend to those who perform "quasi-judicial" functions. Gallas v. Supreme Court of Pa., 211 F.3d 760, 772-73 (3d Cir. 2000) (citing Forrester v. White, 484 U.S. 219, 225 (1988) (the protections of judicial immunity extend to officials "who perform quasi-judicial functions"); Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996) ("[Defendant], while acting as Clerk of the United States District Court . . . in many of his actions performed quasi-judicial functions . . . . Even if . . .

[defendant] deceived [plaintiff] regarding the status of the [supersedeas] bond and improperly conducted hearings to assess costs, all in coordination with Judge Brewster, such acts would fall within [the defendant's] quasi-judicial duties and are thus protected by absolute immunity."); McArdle v. Tronetti, 961 F.2d 1083, 1085 (3d Cir. 1992) (holding that a prison physician who prepared an evaluation of an inmate pursuant to a judge's request was "functioning as an arm of the court" and "[a]s such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects Judge Connelly"); Dellenbach v. Letsinger, 889 F.2d 755, 763 (7th Cir. 1989) ("[W]e conclude on the facts before us that the court personnel are entitled to absolute quasi-judicial immunity for their alleged acts [undertaken] pursuant to the judge's instructions.").

In Lepre v. Tolerico, the Third Circuit ruled that Lackawanna County officials were entitled to quasi-judicial immunity because they acted pursuant to a valid bench warrant issued in a child support arrearage proceeding. 156 Fed. Appx. 522, 525 (3d Cir. 2005); see also Waits v. McGowan, 516 F.2d 203, 206-07 (3d Cir. 1975) (same). In other words, "where the defendant is directly involved in the judicial process, he may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge." Waits, 516 F.2d at 206.

All of Quinn and Redic's actions were undertaken as official actions by officers of the Domestic Relations Section and/or pursuant to Justice Wecht or Judge Clark's orders. Consequently, plaintiff's complaint fails to set forth factual allegations that can overcome the quasi-judicial immunity that inures to these defendants under the circumstances.

It follows that all of plaintiff's claims are barred. Consequently, defendants' motion will

17

be granted and plaintiff's amended complaint will be dismissed.  Appropriate orders will follow.

Date: March 21, 2018

> s/David Stewart Cercone
> David Stewart Cercone
> Senior United States District Judge

cc: Steven Addlespurger
1391 Noblestown Road
Oakdale, PA 15071
(*Via First Class Mail*)

Michael P. Daley, Esquire
(*Via CM/ECF Electronic Mail*)